UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESS RICHARD SMITH,<br><br>                    Petitioner,<br><br>   v.<br><br>JEFFREY PERKINS,<br><br>                    Respondent. | CASE NO. 2:24-cv-02093-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Petitioner, Jess Richard Smith, is a state prisoner who is currently confined at Coyote Ridge Corrections Center in Connell, Washington pursuant to a 2006 King County Superior Court judgment and sentence under case number 001-05900-7. Dkt. 6; Dkt. 14-1 at 2-12 (Exs. 1, 2). Petitioner proceeds *pro se* and *in forma pauperis* in this action. Dkts. 5, 6. Respondent has filed an answer to Petitioner's habeas petition and submitted relevant portions of the state court record. Dkts. 13, 14. Petitioner has filed a response to Respondent's answer raising a claim unrelated to the claim raised in the habeas petition he filed, and also requesting the Court stay proceedings so he can litigate this new claim in the state courts. Dkt. 15.

The Court having considered the parties' submissions, and the balance of the record, the concludes that the instant federal habeas petition is second or successive and recommends that the petition (Dkt. 6) be transferred to the Ninth Circuit Court of Appeals for consideration as an

REPORT AND RECOMMENDATION - 1

application for leave to file a second or successive petition. The Court also recommends that a certificate of appealability be DENIED.

## BACKGROUND

### I. Statement of Facts

The Washington Court of Appeals ("Court of Appeals") summarized the facts underlying the criminal case against Petitioner as follows:

> In the early morning hours of September 9, 2000, Dale Bateman was viciously attacked by a group of men in the parking lot of a motel in Federal Way. Bateman was transported to a nearby hospital, where he was treated for injuries to his face and head. Among the assailants was Shane Accetturo, who believed that Bateman had stolen approximately $20,000 in cash and marijuana from his residence. After leaving the hospital, Bateman was contacted by his drug dealer, Matt Stoemmer, who offered to set up a drug deal between Bateman and Calvin Wilson at a restaurant in Federal Way. Unbeknownst to Bateman, the meeting was arranged so that Wilson and Smith could "question" him about Accetturo's money and drugs. Upon arriving at the restaurant later that night, Bateman, who was there with several friends, got into the back seat of Wilson's car and they drove off. And, while Wilson was supposed to return Bateman in several minutes after the drug transaction was completed, he never did.
> 
> After a missing person report was filed several days later, authorities commenced an investigation into Bateman's disappearance. Police interviewed a number of individuals, including Stoemmer, and learned that Smith and Wilson had planned to physically intimidate Bateman so that he would disclose the whereabouts of the missing drugs and money. A "BOLO" or "be on the lookout" warning for Wilson's car was entered into a police database. The vehicle was later stopped by police and impounded. The vehicle was searched after authorities obtained a search warrant. The search revealed blood in the back seat and on the inside of the passenger door window of the vehicle. Two bullet holes were also located under the rear seat cushions.
> 
> During subsequent questioning, Smith and Wilson both admitted that Bateman had been shot and killed. Upon leaving the restaurant, Wilson drove several blocks to a residential side street, where he parked the car near a vacant lot. During the trip, Bateman took a Tec 9 pistol out of his backpack and said he was ready if Accetturo decided to come after him again. Bateman then put the gun back in his backpack and zipped it shut. When Bateman asked to see the marijuana he thought he would be purchasing, Smith grabbed Bateman's backpack with the gun, pointed his own gun in Bateman's direction and shot him four times. Bateman died shortly thereafter. After the shooting, Smith and Wilson drove to a remote area, removed Bateman's wallet, and other personal items, and dumped the body in a ravine. They also drove to a park in Auburn, where they burned Bateman's possessions, except for Bateman's gun, which Smith kept.
> 
> In February 2001, Smith pleaded guilty to the crime of second degree felony murder predicated on assault. This court reversed Smith's felony murder conviction in

REPORT AND RECOMMENDATION - 2

> 2005 based on the holdings in *In re Pers. Restraint of Andress,* 147 Wash.2d 602, 56 P.3d 981 (2002),[1] and *In re Pers. Restraint of Hinton,* 152 Wash.2d 853, 100 P.3d 801 (2004). On April 7, 2005, after the trial court entered an order vacating his second degree felony murder conviction, Smith was arraigned on amended charges of one count of felony murder in the first degree with robbery and kidnapping as the underlying predicates and one count of intentional murder in the second degree. Attorney David Trieweiller appeared on behalf of Smith at Smith's arraignment on April 7, 2005.
>
> Four days later, attorney Donald Wackerman of The Defender Agency submitted a formal notice of appearance on Smith's behalf. After Wackerman was subsequently allowed to withdraw from the case, Smith sought to represent himself on June 6, 2005. Convinced that Smith knew what he was doing, the court granted the request. The court nonetheless appointed attorney Andrew Stanton as standby counsel to assist Smith. A defense investigator was also hired to assist Smith. The case was set for trial in July 2005.
>
> The State thereafter moved to continue the trial due to the scheduled vacations of the lead detective, the prosecutor, and defense counsel. Over Smith's objection, the court granted the motion and reset the trial date for September 1, 2005. Attorney Michael Danko was allowed to substitute as standby counsel on August 17, 2005.
> The case was called on September 1, 2005. The court granted the State's motion to exclude witnesses and then recessed the case indefinitely. Over the next eight months or so, Smith, along with his defense investigator, interviewed dozens of prospective witnesses. Throughout this period, numerous hearings were held to monitor the case and address various motions filed by Smith.
>
> In March 2006, Smith hired attorney Peter Connick as standby counsel.[2] At some later date, Connick informed the court that when the jury trial began he would be in charge and Smith would no longer be representing himself.
>
> In August 2006, the jury found Smith guilty in separate verdicts of felony murder in the first degree as charged in count I and the lesser included offense of manslaughter in the first degree in count 2. By way of special interrogatories, the jury also found that Smith caused Bateman's death "in the course of and in furtherance of or in the immediate flight from committing or attempting to commit" both kidnapping in the first degree and robbery in the second degree. At sentencing, the court, although agreeing with the parties that the two counts merged, sentenced Smith on both counts–384 months on the felony murder with firearm enhancement and 207 months on the manslaughter with firearm enhancement. …

Dkt. 14-1 at 14-18 (Ex. 3); *State v. Smith*, 148 Wash. App. 1021 (2009).

## II.   State Court Procedural History

Petitioner appealed from the judgment and sentence to the Court of Appeals. Dkt. 14-1 at 37-122 (Exs. 4, 5, 6, 7). The Washington Court of Appeals affirmed the conviction and sentence

---

[1] [FN 1 by Court of Appeals] In *Andress,* the supreme court held that assault may not serve as the predicate crime for second degree felony murder under former RCW 9A.32.050(1)(b) (1976).

[2] [FN 2 by Court of Appeals] Although Connick had previously represented codefendant Accetturo, Smith waived any possible conflict of interest.

REPORT AND RECOMMENDATION - 3

for murder, but the court struck the alternative conviction for manslaughter to avoid double jeopardy concerns and remanded the matter to the superior court to enter an order striking the manslaughter conviction under count two. *Id.* at 14-29, 186-211 (Exs. 3, 8, 9). Petitioner sought review by the Washington Supreme Court which denied review without comment on March 3, 2010. *Id.*, at 213-228 (Exs. 10, 11). The Court of Appeals issued the mandate on April 9, 2010. *Id.* at 230 (Ex. 12).

On October 21, 2010, the superior court entered an order vacating the manslaughter conviction in accordance with the appellate court's mandate. *Id.* at 12 (Ex. 2). On the same day, the superior court transferred to the Court of Appeals, for consideration as a personal restraint petition ("PRP"), a post-conviction motion that Petitioner had filed seeking to vacate the original judgment and sentence. *Id.* at 232-243 (Exs. 13, 14).

Petitioner appealed from the superior court's order transferring his post-conviction motion contending that the superior court erred in transferring his post-conviction motion and, alternatively, that the conviction for murder violated double jeopardy. *Id.* at 245-324 (Exs. 15, 16, 17, and 18). The Court of Appeals ruled that Petitioner should raise any challenge to the transfer to the post-conviction motion in the PRP proceeding, and further affirmed the murder conviction, rejecting the double jeopardy claim. *Id.* (Ex. 19). Petitioner did not seek review by the Washington Supreme Court, and the state court issued a mandate on June 15, 2012. *Id.* at 338 (Ex. 20).

Following the decision on the appeal challenging the transfer of his post-conviction motion, Petitioner moved to withdraw the PRP, and the Court of Appeals granted the motion and dismissed the PRP. *Id.* at 340 (Ex. 21). The Court of Appeals issued a certificate of finality in that personal restraint petition proceeding on October 22, 2012. *Id.* at 342 (Ex. 22).

REPORT AND RECOMMENDATION - 4

In October 2011, Petitioner had filed a separate PRP in the Court of Appeals. *Id.* at 344-685 (Exs. 23, 24, 25). The Court of Appeals dismissed that PRP as untimely. Dkt. 14-2 at 2-5 (Ex. 26). Petitioner sought review by the Washington Supreme Court. *Id.* at 7-21 (Ex. 27). The Washington Supreme Court denied review, ruling that Petitioner did not timely file the PRP. *Id.* at 23-36 (Exs. 28, 29, 30). The Court of Appeals issued a certificate of finality on April 23, 2014. *Id.* at 38 (Ex. 31).

In June 2012, Petitioner filed another post-conviction motion in the superior court, alleging the prosecution had withheld exculpatory evidence. *Id.* at 109 (Ex. 37). The superior court transferred the motion to the Court of Appeals for consideration as a PRP. *Id.* at 119 (Ex. 38). The Court of Appeals dismissed the petition without reaching the merits of the claim. *Id.* at 121 (Ex. 39). Smith did not seek review by the Washington Supreme Court, and a certificate of finality issued on December 21, 2012. *Id.* at 123 (Ex. 40).

In October 2013, Petitioner filed yet another post-conviction motion in the superior court. *Id.* at 125-148 (Ex. 41). The superior court again transferred the motion to the Court of Appeals for consideration as a PRP. *Id.* at 150 (Ex. 42). The Court of Appeals dismissed the matter without reaching the merits of the claim. *Id.* at 153 (Ex. 43). Petitioner did not seek review by the Washington Supreme Court, and the state court issued a certificate of finality on December 13, 2013. *Id.* at 155 (Ex. 44).

In August 2018, Petitioner filed yet another PRP in the Washington Court of Appeals. *Id.* at 157-214 (Ex. 45). The Court of Appeals dismissed the petition finding Petitioner did not show any unlawful restraint. *Id.* at 216 (Ex. 46). Petitioner sought review by the Washington Supreme Court. *Id.* at 221-237 (Ex. 47). The Commissioner of the Washington Supreme Court denied review, and the Washington Supreme Court denied a motion to modify on April 3, 2019. *Id.* at

REPORT AND RECOMMENDATION - 5

239-256 (Exs. 48, 49, 50).

In April 2020, Smith filed another PRP in the Washington Court of Appeals. *Id.* at 258-401 (Exs. 51, 52, 53). The Washington Court of Appeals dismissed the petition as untimely under state law. *Id.* at 403-408 (Ex. 54). Petitioner sought review by the Washington Supreme Court. *Id.* at 410-432 (Ex. 55). The Deputy Commissioner of the Washington Supreme Court denied review, and the Washington Supreme Court denied a subsequent motion to modify that ruling. *Id.* at 435-458 (Exs. 56, 57, 58). The Washington Court of Appeals issued a certificate of finality on May 21, 2021. *Id.* at 460 (Ex. 59).

In January 2022, Petitioner filed another PRP in the Washington Court of Appeals. *Id.* at (Ex. 60). The Court of Appeals dismissed the petition on the merits. Dkt. 14-3 at 2-7 (Ex. 61). Petitioner sought review by the Washington Supreme Court. *Id.* at 9-27 (Ex. 62). The Deputy Commissioner of the Washington Supreme Court denied review, and the Washington Supreme Court denied a subsequent motion to modify that ruling. *Id.* at 29-68 (Exs. 63, 64, 65). The Washington Court of Appeals issued a certificate of finality on July 27, 2022. *Id.* at 70 (Ex. 66).

In October 2022, Petitioner filed another PRP in the Court of Appeals. *Id.* at 72-93 (Ex. 67). The Court of Appeals dismissed the PRP as untimely. *Id.* at 95 (Ex. 68). The Washington Supreme Court denied review, ruling the lower court properly dismissed the petition as untimely. *Id.* at 99-101 (Ex. 69). The state court issued a certificate of finality on March 7, 2023. *Id.* at 103 (Ex. 70).

In November 2022, Petitioner filed another PRP. *Id.* at 105-158 (Exs. 71, 72). The Court of Appeals dismissed the petition as untimely, successive, and frivolous. *Id.* at 160-161 (Ex. 73). Petitioner did not seek review by the Washington Supreme Court, and the Court of Appeals issued a certificate of finality on June 26, 2023. *Id.* at 163 (Ex. 74).

In March 2024, Petitioner filed another PRP in the Court of Appeals. *Id.* at 165-174 (Ex. 75). The Court of Appeals dismissed the petition as untimely and without merit. *Id.* at 176-178 (Ex. 76). Petitioner did not seek review by the Washington Supreme Court, and the Court of Appeals issued a certificate of finality on October 8, 2024. *Id.* at 180 (Ex. 77).

In July 2024, Smith filed another PRP in the Court of Appeals. *Id.* at 182-210 (Ex. 78). In this petition, Petitioner raised his current habeas claim, alleging that he did not receive credit against his sentence for time served in the county jail prior to sentencing. *Id.* The Court of Appeals dismissed the personal restraint petition, ruling that Petitioner failed to prove the denial of such credits. *Id.* at 212-213 (Ex. 79). Petitioner sought review by the Washington Supreme Court. *Id.*, at 215-298 (Exs. 80, 81). The Washington Supreme Court denied review, ruling that Petitioner failed to show any denial of credit for time served in jail prior to sentencing. *Id.* at 300-301 (Ex. 82). The Court of Appeals issued a certificate of finality on January 16. 2025. *Id.* at 303 (Ex. 83).

### III. Prior Federal Habeas Proceedings

In April 2014, Petitioner filed his first federal habeas petition challenging his challenging the conviction and sentence imposed in his 2006 King County Superior Court judgment and sentence in case number 001-05900-7. *Id.* at 305-347 (Ex. 84); *Smith v. Obenland*, No. 2:14-CV-00517-TSZ-BAT, Dkts. 4, 32, 35. The Court dismissed the petition as untimely under the federal statute of limitations. *Id.* at 349-358 (Ex. 85); *Smith v. Obenland*, No. 2:14-CV-00517-BJR, Dkts. 32, 35. This Court and the Ninth Circuit denied a certificate of appealability. *Id.* at 358-360 (Exs. 85, 86).

In May 2019, Smith filed a second federal habeas petition challenging his conviction and sentence in the same 2006 state court judgment and sentence. *Id.* at 362-381 (Ex. 87); *Smith v.*

REPORT AND RECOMMENDATION - 7

*Uttecht*, No. 2:19-CV-00768-BJR-MLP, Dkts. 13, 17. The Court found the petition to be successive under 28 U.S.C. § 2244(b) and transferred the petition to the Ninth Circuit for consideration as a request for leave to file a successive petition. *Id.* at 383-384 (Ex. 88); *Smith v. Uttecht*, No. 2:19-cv-00768-BJR-MLP, Dkts. 13, 17. This Court and the Ninth Circuit denied issuance of a certificate of appealability. *Id.* at Dkts. 22, 23.

## GROUNDS FOR RELIEF

Petitioner presents the following ground for relief in the instant (his third) federal habeas petition: "The King County jail's refusal to provide credit for time served violates due process." Dkt. 6 at 5.

## DISCUSSION

Petitioner is in custody pursuant to a 2006 King County Superior Court judgment and sentence under case number 001-05900-7. Dkts. 6 at 1, 19; Dkt. 14-1, Exs. 1, 2. Petitioner argues in his petition that he is entitled to habeas relief because the King County Jail failed to provide him with appropriate credit for time served prior to his 2006 sentencing in violation of his due process rights. Dkt. 6 at 5. Petitioner refers to his 2006 judgment and sentence which states that: "Credit is given for [ ] __ days served [√] days as determined by the King County Jail, and the Dep't of Corrections solely for confinement under this cause number pursuant to RCW 9.94A.505(6)[3]." Dkt. 6 at 5; Dkt. 14-1 at 5. Petitioner argues that he was not properly credited for his time served prior to his 2006 sentence. Petitioner also attaches a DOC kite dated June 5, 2024, wherein he asserts, in relevant part, that he was not given credit for time served from 9-16-2000 to 9-1-2006 after his new (2006) trial. Dkt. 6 at 31. The response to the kite states, in

---

[3] RCW 9.94A.505(6) provides: "The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced."

REPORT AND RECOMMENDATION - 8

relevant part, that "we did not change the time start date when you were resentenced we kept it at 4-24-01[.]" *Id.*

Petitioner also attaches to his petition a copy of a September 4, 2024, letter the Department of Corrections ("DOC") sent "in response to [petitioner's] inquiry … regarding [petitioner's] time calculations for King County cause 001058007, specifically credit from September 18, 2000 to September 1, 2006." Dkt. 15-1 at 37. The DOC letter states that Petitioner is "receiving presentence jail credits of 221 which accounts for the time from 09/15/00-04/24/01 at 15% for 39 presentence good time days."

The letter further states that Petitioner's "most recent Judgment and Sentence [from 2006] does not specify an amount of credit ordered by the court, but rather delegates to King County Jail and Dept of Corrections to determine credit for time served per RCW 9.94A.505(6) then we applied your presentence credit per the jail certification." *Id.* The letter states:

> In order to ensure that DOC time calculations are calculated correctly and there is no time missing when there are no gaps in confinement time served, we keep your date of arrival the same as the original date of arrival (04/24/01) prior to the vacate and resentence. Per the calculation below, please see the date of arrival and start of your enhancement time as 04/24/01, meaning that you are receiving DOC credit from 04/24/01-09-01/06 and forward since we never stopped your time.

*Id.* The letter then states that "[a] review has been completed on your file and your ERD of 08/04/2023 has been determined by the following:

> Enhancement:
> Date of Arrival to DOC: 04/24/01
> + 1825 days (60 months) flat time for the Firearm Enhancement
> = 04/23/06 End date of enhancement, start Mandatory sentence
>
> Mandatory:
> Time Start: 03/24/06
> +7304 days (240 months) flat time
> = 04/22/26 End date of Mandatory, start Base Sentence
>
> Base Sentence:
> Time Start: 04/22/06
> +2256 (84 months)

REPORT AND RECOMMENDATION - 9

```
-221 for presentence jail credits
-39 for presentence good time credits
=2296 time remaining to serve
-114.79 for Eligible Earned Time
-114.79 for Earned Time Not Earned
-230 for Eligible Good Time
-230 for Lost Good Time
2296
4/22/26 + 2296 = 09/04/32"
```

*Id.* at 21-22.

Petitioner wrote on the DOC letter the following calculations in support of his habeas claim:

> Date of Arrest: 9-17-2000. Date of Reconviction and Resentencing: 9-1-2006. Total Days 2,206 Days; [4] Adding 15% totals 331 days. 2,2056 + 331 is 2,537. 9-1-06 sentence of 32 years equals 11,680 Days subtracting 2,537 amounts to 9,143 days to serve. Credit for time owed/served: 2,537 Days.

*Id.*

Respondent argues, in part, in his answer that the petition is an unauthorized successive petition under 28 U.S.C. § 2244(b), and therefore the Court lacks jurisdiction to consider the matter. Dkt. 13 at 9, 11-15. Respondent argues the petition should be transferred to the Ninth Circuit Court of Appeals for consideration as an application to file a successive petition. *Id.* at 10.

The Ninth Circuit has held "28 U.S.C. § 2254 is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment[.]" *White v. Lambert*, 370 F.3d 1002, 1009 (9th Cir. 2004), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010); *see also Dominguez v. Kernan,* 906 F.3d 1127, 1135 (9th Cir. 2018) ("Because § 2254 limits the general grant of habeas relief under § 2241, it 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment,

---

[4] The Court notes there are 2175 days between 9-17-2000 and 9-1-2006, not 2,206 as Petitioner claims.

REPORT AND RECOMMENDATION - 10

even when the petitioner is not challenging his underlying state court conviction.'") (quoting *White*, 370 F.3d at 1009). Petitioner is in custody pursuant to a state court judgment and therefore his petition for writ of habeas corpus, although nominally brought under 28 U.S.C. § 2241, is properly construed as brought pursuant to 28 U.S.C. § 2254.

28 U.S.C. § 2244 provides, in relevant part:

> (a) *No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus*, except as provided in section 2255.
>
> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
> (3)(A) *Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.*
> (B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.
> (C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes prima facie showing that the application satisfies the requirements of this subsection.

28 U.S.C. § 2244 (emphasis added).

Petitioner is confined pursuant to the same 2006 King County judgment and sentence he challenged in his two prior federal habeas petitions in 2014 and 2019, both of which were dismissed as untimely. Because petitioner's initial federal habeas petition was dismissed as time-barred, the petition currently before the Court is second or successive for purposes of 28 U.S.C. §

REPORT AND RECOMMENDATION - 11

2244(b). *McNabb v. Yates*, 576 F.3d 1028, 1029 (9th Cir. 2009); (holding that dismissal for failure to comply with one-year statute of limitations renders subsequent petitions challenging the same conviction or sentence "second or successive" under § 2244(b)); *Murray v. Greiner*, 394 F.3d 78, 81 (2d Cir. 2005) (same); *Reyes v. Vaughn*, 276 F.Supp.2d 1027, 1029 (C.D. Cal. 2003) (same).

Petitioner argues his petition is not second or successive because "DOC's credit for time served, was first denied, via kite, on June 28, 2024." Dkt. 6 at 27. However, as Petitioner acknowledges, the calculation of credits he challenges was directed pursuant to the terms of the judgment and sentence entered in 2006 which states that: "Credit is given for [ ] __ days served [√] days as determined by the King County Jail, and the Dep't of Corrections solely for confinement under this cause number pursuant to RCW 9.94A.505(6)." Dkt. 6 at 5; Dkt. 14-1 at 5. Thus, the error by King County Jail and the DOC in allegedly failing to properly credit him for the time he served in King County Jail prior to sentencing, occurred in or around the time of his 2006 judgment and sentence, before the filing of his first habeas petition in 2014.

Petitioner fails to demonstrate the claim he raises in the instant petition – a challenge to the calculation of his presentence time served -- was unripe or could not have been adjudicated on the merits in his prior habeas petitions in 2014 and 2019. *See McNabb*, 576 F.3d at 1029 (indicating a petition is second or successive if it raises claims that were or could have been adjudicated on the merits in an earlier petition). Here, the error Petitioner challenges in his petition occurred before the filing of his first habeas petition in 2014 and, therefore, his current petition is a second or successive petition under 28 U.S.C. § 2244(b) even if, as he claims, he did not become aware of the alleged error until the 2024 kite and/or letter from DOC. *See United States v. Obeid*, 707 F.3d 898, 901 (7th Cir. 2013) (In determining whether a habeas petition is

REPORT AND RECOMMENDATION - 12

second or successive, Courts have distinguished between "genuinely unripe claims (where the factual predicate that gives rise to the claim has not yet occurred) from those in which the petitioner merely has some excuse for failing to raise the claim in his initial petition (such as when newly discovered evidence supports a claim that the petitioner received ineffective assistance of counsel). Only the former class of petitions escapes classification as 'second or successive.'"); *U.S. v. Buenrostro*, 638 F.3d 720 (9th Cir. 2011) (same).

Pursuant to 28 U.S.C. § 2244(b)(3)(A), this Court lacks jurisdiction to consider a second or successive petition unless and until the Ninth Circuit Court of Appeals has authorized its filing. *See Burton v. Stewart*, 549 U.S. 147, 157 (2007) (finding that the district court lacked jurisdiction to consider the merits of a second or successive petition absent prior authorization from the circuit court). Petitioner does not contend, nor does he present evidence, that the Ninth Circuit has authorized the filing of the instant petition.

Accordingly, the Court concludes the instant habeas petition is second or successive, and the Court is without jurisdiction to consider the petition until the Ninth Circuit has authorized its filing. 28 U.S.C. § 2244(b)(3)(A). The Court construes Petitioner's habeas petition as an application for leave to file a second or successive petition. Accordingly, this case should be transferred to the Ninth Circuit, in the interests of justice, pursuant to 28 U.S.C. § 1631. Petitioner is advised this transfer does not itself constitute compliance with § 2244(b)(3) and Ninth Circuit Rule 22-3. Petitioner must still file a motion for leave to proceed in the Court of Appeals and make the showing required by § 2244(b)(2).

Because the Court finds the present habeas petition is an unauthorized second or successive petition and lacks jurisdiction to consider it, the Court need not reach the merits of the other arguments raised in Respondent's answer.

REPORT AND RECOMMENDATION - 13

As to Petitioner's request this action be stayed so he can pursue other remedies in state court with respect to a separate claim that is not a part of the current petition, the Court recommends DENYING a stay of federal proceedings.

The Court retains the discretion to grant or deny a stay of habeas proceedings. *See Rhines v. Weber*, 544 U.S. 269 (2005). The Court will normally grant a stay where a Petitioner has shown good cause for his or her failure to exhaust meritorious claims and has not engaged in dilatory tactics. *Id.* at 278. Here, the claim set forth in the habeas petition before the Court is limited to the argument that the King County jail has refused to provide credit for time served. Petitioner does not seek to exhaust state remedies as to this claim, and as noted above, Petitioner's calculation of the number of days he spent in custody before being taken in the custody of the Department of Corrections is erroneous. The stay request thus has nothing to do with the claim before the Court and lacks merit given Petitioner's erroneous miscalculations. Additionally, as noted above, Dkt. 6 at 5. Additionally, between 2010 and 2024, Petitioner has filed at least eleven PRP's or motions for post-conviction relief in the state courts, and two federal habeas petitions. Petitioner's current request to stay proceedings is contrary to the policy goal that the Court timely resolve matters without undue duplication or delay and is dilatory in this regard.

The Court accordingly recommends that Petitioner's request that federal habeas proceedings be stayed be DENIED.

### CERTIFICATE OF APPEALABILITY

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has

REPORT AND RECOMMENDATION - 14

made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends Petitioner not be issued a COA. No jurist of reason could disagree with the above evaluation of Petitioner's claims or conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

For the reasons above, the undersigned recommends transferring this matter to the Court of Appeals for the Ninth Circuit for consideration as an application for permission to file a second or successive petition. The Court also recommends denying Petitioner's motion to stay proceedings. The Clerk should be directed to close this case and transfer all original documents to the Ninth Circuit, while retaining a copy of the petition and this order in the file. A proposed order is attached.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, Petitioner should not file a notice of appeal in the Court of Appeals for the Ninth Circuit until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 21, 2025.** The Clerk shall note the matter for **April 25, 2025**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the

REPORT AND RECOMMENDATION - 15

Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due. he failure to timely object may affect the right to appeal.

DATED this 7th day of April, 2025.

                                                                            /s/ BT

BRIAN A. TSUCHIDA
United States Magistrate Judge